71372 Insurance Brokers West, Inc. v. Liquid Outcome, LLC Good morning, and may it please the Court. My name is Matthew Sparks. I represent the appellate insurance brokers West, Inc., which I'll refer to as IVW, as we did in the briefs. Before I begin, may I reserve two minutes for rebuttal? Yes. Your Honors, the release provision at issue in this case is one sentence. Two clauses. First, the first clause provides, and I'm paraphrasing, that IVW shall not sue Astonish and releases all claims against Astonish as of the date of the amendment. I think you just left out the word forever. Forever. Yes, Your Honor, I was just paraphrasing. But that's a pretty big word. I understand that. So it's very clear that as of the date of the amendment, all claims are forever released. However, there's the second clause, which provides except, and I refer to this as the carve-out clause, it provides except those claims which occur in the future as a result of a material default in Astonish's performance of the amendment. That's true of every release ever signed on the planet, isn't it, that you don't release future claims that haven't even occurred to anyone yet? So the question, Your Honor, is... I'm sorry, is future claims of newly agreed-upon work that? Well, my client's position is that the reason that clause is in there was to preserve or essentially provide for the revival of release claims in the event of a future breach by Astonish. And the reason we suggest that is because to interpret it any other way would give the carve-out clause literally no meaning. Because we could take out, we could just stop the release provision where it says, as of the date of this amendment, leave out the except for future claims, and that would still give IVW the right to sue Astonish in the event of a future breach of the amendment. But the parties went further and added the carve-out clause, accepting and specifically excluding future claims resulting from a breach of the amendment. Right, but there's no suggestion in the carve-out that they would undo the discharge. They would just make clear the discharge doesn't apply to the future claim. I think that the intent of the parties was essentially to put this... We're looking at language here that's seemingly unambiguous. I think that there's... Future claims for future work. Yes, Your Honor, but let's also keep in mind that the... And this kind of ties into Astonish's argument that this is a substitute contract. The amendment, for what is not a substitute contract, I mean to qualify as a substitute contract, the law is clear that you have to fully discharge all of the parties' obligations under the original agreement. Here, on the other hand, what we have is an amendment which specifically provides that the original agreement shall remain in full force in effect. All of the parties' respective obligations, including the various products and services to be provided by Astonish, are listed in the amendment. He wants to say that all the past claims are discharged if you perform your future obligations in the future. I think that's your argument reduced to a snub. In one sense, and I have some alternative arguments as well, but it's... It's pretty easy to write that. By using the exception, by including the carve-out clause, it brings this out of the substitute contract world and into the executory court world. Just out of curiosity, this is a claim that's worth either $28,000 or, by your claim, $140,000, although there's no rescission action pleaded. Why are we here? Why don't we just go over to state court and get it adjudicated over there? There's a number of reasons, but at this point, whatever ruling this court makes may potentially have preclusive effect in state court. I'm sure Astonish will raise that argument, so here's where we are. Even if the court construes the amendment as creating a substitute contract, number one, Astonish waived the argument by not raising that in district court below, and number two, your Honor mentioned rescission. In IVW's first amended complaint, the last paragraph on the last page, IVW did indeed plead for equitable relief. Now, and it's clear just from reading the amended complaint as well as our briefs in the district court below and our briefs here, that IVW seeks to impose liability against Astonish for damages under the original agreement based on the fact that Astonish breached the amendment. So to the extent that rescission is required in order to do so, we contend that it's not. We contend that we can do so just based on the carve-out clause in the amendment, but to the extent that rescission is required, we've pleaded sufficient facts to put Astonish and the court on notice. What fact for a rescission claim? You need to show something about at the time of agreeing to this contract that there was some fraud or something like that, wouldn't you? Well, what we've alleged is that Astonish breached both the marketing agreement and breached the amendment. Right, so you can't breach a contract remedy. That's not equitable. It's not fraud. It's not fraud. It's not rescission. That's correct, Your Honors. The third way that we are seeking to hold Astonish responsible is just based on the value of the amendment. Astonish's position, with which the district court agrees, is that the total value of the amendment is equal to the dollar amount of the payments due from IBW to Astonish in connection to their WIP, which is the $22,000 figure, which brings us well below the jurisdictional minimum. However, what Astonish overlooks is that the consideration provided to Astonish from IBW in exchange for Astonish's agreement to perform in accordance with the amendment, including providing the products and services, that consideration was not limited to just the $22,500. We also provided the release, which was obviously of significant value. And so in connection with our... The release released them. And that's not the measure of damages in a breach of contract case. I respectfully submit under some of the cases that we've cited to that we should be permitted to recover the value of claims. We should have been permitted to go to trial, establish the value of those claims, and recover those. You can under a restitution theory, but tell us under what breach of contract theory would expectancy not be the measure of damages where expectancy is easily determined? I think that the case that we cited to was Pasady versus... I can't remember the exact name, but it's in the briefs, which addresses these issues. And I respectfully... As the law of Rhode Island. Yes, Your Honor. May it please the court, Robert Kavanaugh on behalf of the FLE. Astonished results. We ask that the court affirm the judgment of the district court for four reasons. First, the release said issue is valid. IBW has never contested it as being invalid. Second, the language of the first clause of the release clearly and unambiguously describes the very claims that it hopes to assert here. Claims based on the original contract, and it clearly and unambiguously prohibits IBW from asserting them. Third, the release and the amendment clearly show that that release was to take effect immediately, not upon fulfillment of some future conditions. By its terms, from the date hereof, IBW is prohibited from asserting claims which it knows about or does not know about as of the date of this amendment. That took effect immediately. And fourth, under what IBW characterizes as the carve-out clause, IBW is permitted to seek a remedy in breach in damages, but it is prohibited or it is limited by the terms of that second clause to a claim in the future based on breach of the amendment. And under the terms of the amendment, its value is circumscribed by the terms of the reduction provision, which limits the value of that amendment to $22,550, which is well short of the statutory threshold in a case based upon diversity. As to the point about IBW's point about consideration, it's conflating the two issues of breach and consideration. We would agree that this second clause is a carve-out clause, but what it is not is a clawback clause. To interpret it in such a way would be contrary to the dictates of contractual interpretation in this case, namely that the two clauses are to be read together, not in a way that would abrogate the meaning of the first clause, which, again, IBW does not contest as reaching, as describing the claims that it hopes to assert in this case. I want to be clear, Your Honor, we're not saying that this Court has to hold that what was created as a result of the amendment was a substitute contract. It was a substitute contract, but the Rhode Island case law is clear, as we stated in pages 11 and 12 of our brief. The Rhode Island Supreme Court in the Weaver v. American Power Conversion Court stated that the effect of a subsequent agreement on the party's rights under an original agreement is to be determined based on the application of the usual dictates of contractual interpretation, and it overlooks the distinction between substitute contract and executory accord. We took up that discussion based on that disavowed dichotomy because of the cases and the arguments that IBW made based on cases from different jurisdictions, largely from the middle to the early part of last century, when that distinction persisted. And if you look at those cases, the contracts it issued clearly showed the party's intent to make their leases contingent on the fulfillment of certain conditions. They were readily distinguishable. Appellant relies on Warner v. Rosignol, for example, in which the release and settlement themselves were put into escrow and only meant to be filed after payment of the settlement terms in that case. Clearly, under those circumstances, it was an executory accord. And under the cases it cites, the courts found that based on the circumstances of those cases, which again are distinguishable. It then suggests to this Court that we cannot even mention substitute contract to rebut its arguments based on that case law. And I would submit that we have not waived the right to at least raise that discussion. And we would also assert that, even under that outmoded method of analysis, this would be a substitute contract. And I think it accurately describes the circumstances of this case, that parties drastically change the nature of their relationship after this amendment was executed. Why do we need to go there? Why don't we just... Don't you want us just to find the release, release them forever, and then any other damages that came up that was subject to a no consequential damages clause and... Yes, Your Honor. Yes, Your Honor. And that was the argument we made before the District Court. And that's the analysis that the District Court applied to this case. We took it up, Your Honor, to clarify that... to put I.B.W.'s arguments in context, that they arise under that old method of analysis that, as Your Honor points out, is not applicable under Rhode Island precedent. But we wanted to bat that argument out of the air and make sure there was no doubt that this comes down to a matter of contractual interpretation. We're not saying that I.B.W. can't assert a claim for breach under the terms of the second clause. They can. They're just doing it in the wrong court. And to interpret it in a way that I.B.W. suggests would, again, be contrary to its plain language, saying that it can only base a claim for damages on future conduct as a result of breach of the amendment, but also would, again, abrogate the meaning of the initial clause. As to rescission, of course, I.B.W. has waived that argument. But even if they had, what they're asking the court to do is inconsistent. They're asking the court to make a Texas two-step around the plain language of this release, asking it to exercise its equitable powers and set aside this agreement that exists between the parties, resurrect an old agreement, and allow it to make a claim for damages based on its full amount. I don't think the law, Your Honor, I would argue, does not count in such a use of the court's powers. I want to address. Suppose your client failed to perform in the latter phase post-release and didn't provide the services that were necessary, so a clear breach. You would agree that there is a claim for that breach? Yes, I would, Your Honor. A breach of contract claim? Yes. And the measure would be expectancy? The measure, I would argue, Your Honor, is the value of the contract. The expectancy could be a measure, but I would argue that it is limited. Suppose it were clear that your client had just radically underbid at $28,000 and it would cost $80,000 for anyone else to come in and provide the service that your client failed to provide. Well, you'd need $75,000 plus $28,000, so say $140,000. Then wouldn't there be a $140,000 claim? Your Honor, I think that's speculative at this point, Your Honor, based on the allegations. But is it to a legal certainty? I would argue that it is, Your Honor. The measure of damages in this case, the best measure of damages, is the amount that Astonish agreed to perform the services at. But how do we, if expectancy is the measure, then we need to know what it would cost for someone to cover and it would provide another vendor to come in and provide the services. How do we know, and do we have to know at this stage of the case, what that would be? I would argue no, Your Honor. Again, it's kind of putting the character before the horse to say that because we have a claim for this amount, therefore we can prove expectancy damages. And based on the limitation in the release, I would argue that that forecloses their ability to seek an amount higher than that number, certainly on this record, Your Honor. But as to the, I want to address the standard overview. They haven't plead that anyway. Sorry? They didn't plead the other anyway. They didn't, Your Honor. I just want to discuss the fact that whether the court analyzed it under a factual or facial method of analysis, the result in this case would be the same. The court determined as a matter of law that the release side issue was unambiguous and it would be reviewed de novo anyway. And I just wanted to make that point, Your Honor. If there are no more questions. Thank you. Thank you, Your Honor. I'd ask the court to affirm the judgment of the district court. Your Honors, counsel brought up the case of Warner v. Rosignol. And in that case, First Circuit case, the First Circuit stated that a settlement agreement, however labeled, will not bar recourse to the original claim in the event that the defendant breaches the settlement agreement. And that's precisely what we're doing. To the extent the amendment contains a release, it essentially operates in a sense as a settlement agreement. Now the facts in Warner v. Rosignol are not precisely the same. The court there expressly found that to be an executory accord. And the parties in that case had specifically agreed, or the court found that they had specifically agreed, that the stipulation of dismissal would be held in escrow until payment. But that doesn't change the fact that this court went through the overall analysis of what parties can do, a release or can do, in the event a releasee breaches the release agreement. And this court specifically explained that the releasor in that situation would have a right to assert directly a claim for breach of the underlying or pre-release agreement. Well, sure. If you and I settle a case and the settlement agreement says, if you perform over the next six months, then I will release you. Or if it says I release you, but my release is contingent on your performance, then we have an executory release, which is what that case is about. But what's that got to do with this case, other than the fact that that's not the language your client entered into here? I just don't think that that's necessarily exactly what Warner v. Roosud and all stands for. At least the dicta that we're discussing right now. At the end of the day, yes, this court concluded that was an executory accord. But if you look at its statements, and I just quoted just one of them, but there's several statements discussing the releasor's right to it. May I finish my thought, Your Honors? Yes. To assert the pre-release claim, and for example, three of them, Pacheco v. Delgado, Whitfield v. Whittington, and Shieldco v. Williamson, none of those were executory accord cases. And those are the cases that the First Circuit cited in support of its statement that a releasor can pursue previously released claims in the event that the releasee breached the settlement. Thank you. Thank you, Your Honors. Thank you.